**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

B 10 (Official Form 10) (12/11)

| UNITED STATES BANKRUPTCY COURT Middle DISTRICT OF Pennsylvania | PROOF OF CLAIM |
|---|---|
| Name of Debtor: STEPHEN & KERI SHANEBERGER    Case Number: 12-06415 | |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
PNC Bank

**COURT USE ONLY**

Name and address where notices should be sent:
PNC Bank
PO Box 94982
Cleveland, OH 44101
Telephone number:    email:
1-866-622-2657  EXT. 68110

❏ Check this box if this claim amends a previously filed claim.

Court Claim Number:_____
(*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

Telephone number:    email:

1. **Amount of Claim as of Date Case Filed:**    $ 24,806.07

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. **Basis for Claim:** MONEY LOANED
   (See instruction #2)

3. **Last four digits of any number by which creditor identifies debtor:** 3-6-1-0

3a. **Debtor may have scheduled account as:**
   _____
   (See instruction #3a)

3b. **Uniform Claim Identifier (optional):**
   _____
   (See instruction #3b)

4. **Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Nature of property or right of setoff:** ❏ Real Estate  ☑ Motor Vehicle  ❏ Other
**Describe:** 2011 KIA SPORTAGE
**Value of Property:** $ 20,000.00
**Annual Interest Rate** 7.09 % ☑ Fixed  or  ❏ Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$_____

**Basis for perfection:** AUTO

**Amount of Secured Claim:** $ 24,806.07
**Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❏ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

❏ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. **Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8)

Check the appropriate box.

[✓] I am the creditor.   [ ] I am the creditor's authorized agent.   [ ] I am the trustee, or the debtor,   [ ] I am a guarantor, surety, indorser, or other codebtor.
(Attach copy of power of attorney, if any.)   or their authorized agent.   (See Bankruptcy Rule 3005.)
(See Bankruptcy Rule 3004.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: JUDY BORKEY
Title: Bankruptcy Specialist
Company: PNC Bank
Address and telephone number (if different from notice address above):

/s/ JUDY BORKEY    11/09/2012
(Signature)   (Date)

Telephone number:    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

Case 5:12-bk-06415-JJT　Claim 3-1　Filed 11/09/12　Desc Main Document　Page 3 of 3
Case 5:12-bk-06415-RNO　Doc 642　Filed 05/28/19　Entered 05/28/19 11:18:43　Desc Main Document　Page 4 of 9
Exhibit　Page 4 of 9

# POC ATTACHMENT NON REAL ESTATE

**Debtor Name**     STEPHEN & KERI SHANEBERGER

**Case number**     12-06415

| | |
|---|---|
| **Principal** | $24,672.25 |
| **Interest** | $133.82 |
| **Late charges** | ____ |
| **Fees** | |
|    NSF | ____ |
|    Repo/Sale | ____ |
|    Past due payments | ____ |
| ____ | |
| ____ | |
| **TOTAL** | **$24,806.07** |

# PENNSYLVANIA MOTOR VEHICLE INSTALLMENT SALE CONTRACT

Dated: August 10, 2011

| ANNUAL PERCENTAGE RATE (The cost of your credit as a yearly rate.) | FINANCE CHARGE (The dollar amount the credit will cost you.) | Amount Financed (The amount of credit provided to you or on your behalf.) | Total of Payments (The amount you will have paid after you have made all scheduled payments.) | Total Sale Price (The total cost of your purchase on credit, including your downpayment of $ -435.00) |
|---|---|---|---|---|
| 7.09 % | $ 7745.16 | $ 28528.56 | $ 36273.72 | $ 36273.72 |

**Your Payment Schedule will be:**

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | $ 431.83 | Monthly, beginning 09/09/2011 |
|  | NA |  |

**Security:** You are giving a security interest in the motor vehicle being purchased.
**Prepayment:** If you pay off early, you will not have to pay a penalty.

Filing Fees: $ 6.00

**Late Charge:** If a payment is late, you will be charged 2% of the portion of the payment which is late for each month, or part of a month greater than 10 days, that it remains unpaid.

See below and any other Contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date and prepayment refunds and penalties.    e means estimate

In this Contract we are the SELLER:
GATEWAY KIA OF QUAKERTOWN
400 SOUTH WEST END BOULEVARD
QUAKERTOWN    PA    18951

You are the BUYER(S):
KERI SHANEBERGER        STEPHEN B SHANEBERGER
RR7 BOX 1267            RR7 BOX 1267
SAYLORSBURG  PA 18353   SAYLORSBURG  PA 18353

IF YOU DO NOT MEET YOUR CONTRACT OBLIGATIONS, YOU MAY LOSE THE MOTOR VEHICLE AND PROPERTY THAT YOU BOUGHT WITH THIS CONTRACT, AND/OR MONEY ON DEPOSIT WITH THE ASSIGNEE.

This Contract is between Seller and Buyer. All disclosures have been made by Seller. Seller intends to assign this Contract to the Assignee.

If there is more than one Buyer, each promises, separately and together, to pay all sums due us and to perform all agreements in this Contract.

**TRADE-IN:** You have traded in the following vehicle: 2007 CHEVROLET EQUINOX LT A  2CNDL73FX76042660

If a balance is still owing on the vehicle you have traded in, the Seller will pay off this amount on that any trade-in is free from lien, claim, encumbrance or security interest, except as shown above in the "Lien Payoff."

SHANEBERGER KERI

**PROPERTY INSURANCE:** You may choose the person through whom insurance is obtained against liability arising out of use or ownership of the Vehicle. In this Contract, you are promising to insure...

**CREDIT INSURANCE IS NOT REQUIRED:** Credit Life Insurance and Credit Disability Insurance will not be provided unless you sign below and agree to pay the additional cost(s). Please read the information on the reverse side. Your insurance certificate or policy will tell you the MAXIMUM amount of insurance and will be for the term of the credit. We may receive financial benefit from your purchase of credit insurance.

By signing, you select Single Credit Life Insurance, which costs $ NA. What is your age? ___ Years

By signing, you select Single Health Insurance, which costs $ NA. age? ___ Years

Signature of Buyer to be insured for Single Credit Life Insurance
Signature of Buyer to be insured for Single Credit Accident & Health Insurance

By signing, you both select Joint Credit Life Insurance, which costs $ NA. What are your ages?
By signing, you both select Joint Credit Accident & Health Insurance, which costs $ NA. What are your ages? Percentage to be insured ___ %

1. _____
2. _____

Signatures of both Buyers to be insured for Joint Credit Life Insurance
Signatures of both Buyers to be insured for Joint Credit Accident & Health Insurance

Insurer: _____

**PURCHASE OF THE VEHICLE AND TERMS:** You agree to purchase, under the terms of this Contract, including the terms in the boxes above, the following motor vehicle and its extra equipment, which is called the "Vehicle" in this Contract.

| N/U | Year and Make | Series | Body Style | No. Cyl. | Truck Ton Capacity | Serial Number |
|---|---|---|---|---|---|---|
| N | 2011 KIA | SPORTAGE/LX | WAGON 4 DOOR | 4 |  | KNDPBCA28B7031727 |

Equipped with: A.T.  P.S.  AM-FM Stereo  5 Spd.  Other _____
A.C.  P.W.  AM-FM Tape  Vinyl Top

**ASSIGNEE:** We may assign this Contract and Security Agreement to a sales finance company which is the "Assignee." If the Assignee assigns the Contract to a subsequent assignee, the term also refers to such subsequent assignee. After the assignment, all rights and benefits of the Seller in this Contract and in the Security Agreement shall belong to and be enforceable by the Assignee. The Assignee will notify you when and if Seller makes an assignment.

**PNC BANK, NATIONAL ASSOCIATION**

**CO-SIGNER:** Any person signing the Co-Signer's Agreement below promises separately and together with all Co-Signer(s) and Buyer(s), to pay all sums due us and to perform all agreements in this Contract. Co-Signer will not be an Owner of the Vehicle.

**CO-OWNER:** Any Co-Owner signing below gives us a security interest in the Vehicle and agrees separately and together with all Co-Owner(s) and Buyer(s), to perform all agreements in the Security Agreement and all other parts of this Contract except the "Promise to Pay" section.

**PROMISE TO PAY:** You agree to pay us the Total Sale Price for the Vehicle by making the Cash Downpayment, assigning the trade-in, if shown above, and paying us the Amount Financed plus interest. You promise to make payments in accordance with the Payment Schedule. You promise to make payments on or before the same day of each month as the first payment due date. You agree to pay all other amounts which may become due under the terms of this Contract. You agree to pay the Seller or Assignee costs of suit. You also agree to pay reasonable attorneys' fees if Seller or Assignee hires an attorney to collect amounts due under this Contract or to protect or get possession of the Vehicle. You agree to make payments at the place or to send payments to the address which the Assignee most recently specifies in the written notice to you.

**SECURITY AGREEMENT:** To secure the payment of all sums due and the performance of all required obligations under this Contract, you give a security interest in the Vehicle, in all parts (called "accessions") attached to the Vehicle at any later time, and in any proceeds of the Vehicle, including insurance proceeds. The Assignee may set-off any amounts due and unpaid under this Contract against any of your money on deposit with Assignee. This includes any money which is now or may in the future be deposited with Assignee by you. Assignee may do this without any prior notice to you.

**ADDITIONAL TERMS AND CONDITIONS:** THIS CONTRACT CONTINUES ON THE REVERSE SIDE. YOU ARE OBLIGATED TO ALL THE TERMS OF THE CONTRACT WHICH APPEAR ON THE FRONT AND REVERSE SIDES.

**Itemization of Amount Financed**

| | |
|---|---|
| Cash Price (including sales tax of $ 1132.86) | $ 27297.86 |
| Cash Downpayment | $ NA |
| Trade-in Value of Trade-in | $ 7900.00 |
| Lien Payoff to ALLENTOWN EMPLOY | $ 8335.00 |
| Unpaid Cash Price Balance | $ 27732.86 |
| Document Preparation Fee | $ 103.00 |
| Amount Paid to Others on Your Behalf (We may retain a portion of amounts marked *) | |
| To Public Officials for: License, Tags and Registration | $ 66.70 |
| Lien Fee | $ 5.00 |
| To Credit Insurance Company | $ NA * |
| To | $ NA * |
| To GATEWAY KIA OF QUAKE | $ 5.00 |
| For P.A. TIRE TAX | |
| To CNA NATIONAL | $ 616.00 |
| For GAP INSURANCE | |
| To | $ NA * |
| For | |
| To ALLENTOWN EMPLOYEE F | $ 435.00 |
| For NEGATIVE EQUITY | |
| To | $ NA * |
| For | |
| Amount Financed | $ 28528.56 |

The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.

By signing below, we agree to sell the Vehicle to you under the terms of this Contract.

**NOTICE TO BUYER—DO NOT SIGN THIS CONTRACT IN BLANK. YOU ARE ENTITLED TO AN EXACT COPY OF THE CONTRACT YOU SIGN. KEEP IT TO PROTECT YOUR LEGAL RIGHTS.**

SELLER: GATEWAY KIA OF QUAKERTOWN
BY: [signature Bay Kotft]   08/10/2011

BUYER: [signature Keri Shaneberger]  08/10/2011
BUYER: [signature]  08/10/2011

**CO-SIGNER:** YOU SHOULD READ THE NOTICE TO CO-SIGNER, WHICH HAS BEEN GIVEN TO YOU ON A SEPARATE DOCUMENT, BEFORE SIGNING THE CO-SIGNER'S AGREEMENT.

**CO-SIGNER'S AGREEMENT:** You, the person (or persons) signing below as "Co-Signer," promise to pay to us all sums due on this Contract and to perform all agreements in this Contract. You intend to be legally bound by all the terms of this Contract, separately and together, with the Buyer. You are making this promise to induce us to make this Contract with the Buyer, even though we will use the proceeds only for the Buyer's benefit. You agree to pay even though we may not have made any prior demand for payment on the Buyer or exercised our security interest. You also acknowledge receiving a completed copy of this Contract.

Co-Signer's Signature _____  Address _____  Date _____
Co-Signer's Signature _____  Address _____  Date _____

**CO-OWNER'S SECURITY AGREEMENT:** You, the person signing below as "Co-Owner," together with the Buyer or otherwise being all of the Owners of the Vehicle, give us a Security Interest in the Vehicle identified above. You agree to be bound by the terms of the Security Agreement and all other parts of this Contract except the "Promise To Pay" section. You are giving us security interest to induce us to make this Contract with the Buyer, and to secure the payment by the Buyer of all sums due on this Contract. You will not be responsible for any deficiency which might be due after repossession and sale of the Vehicle.

Co-Owner's Signature _____  Address _____  Date _____

**BUYER, CO-SIGNER AND CO-OWNER, AS APPLICABLE, ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THIS CONTRACT AT THE TIME OF SIGNING.**

BUYER [signature]   BUYER [signature]   CO-SIGNER _____   CO-SIGNER OR CO-OWNER _____

**ASSIGNMENT:** The Seller assigns this Contract to the Assignee, in accordance with the terms stated on the reverse side. The assignment is [ ] without recourse; [X] full recourse; [ ] with repurchase. If no box is checked it is without recourse.

Seller: GATEWAY KIA OF QUAKERTOWN   By X [signature Bay Kotft]   Title: GM   Date: 08/10/2011

NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION.

## ADDITIONAL TERMS AND CONDITIONS

1. **HOW THE TOTAL OF PAYMENTS IS COMPUTED:** The Total of Payments is the sum of the Amount Financed and the Finance Charge. The Finance Charge consists solely of interest computed daily on the outstanding balance of the Amount Financed. The Finance Charge shown on the front side has been computed on the assumption that we will receive all payments on their scheduled due dates.

2. **COMPUTING INTEREST:** We will charge interest on a daily basis on the outstanding balance subject to interest on each day of the loan term, including any period for which a late charge is also imposed. The daily interest rate is equal to the Annual Percentage Rate divided by the number of days in that calendar year. Buyer agrees that because interest is calculated on a daily basis, late payments will result in additional interest (and, if applicable, a late charge). Early payments will result in less interest being charged. Early and/or late payments will cause the amount of the final payment to change.

3. **LATE CHARGE:** Buyer agrees to pay a late charge for any payment not made within 10 days after its due date. The late charge will be 2% per month on the unpaid amount of the payment. We will consider any part of a month in excess of 10 days to be a full month. The late charge will be due when earned. No late charge will be due if the reason that the payment is late is because, after default, the entire outstanding balance on this Contract is due. No late charge will be due if the only reason that the payment is late is because of a late charge assessed on an earlier payment.

4. **APPLICATION OF PAYMENTS:** We will apply payments in the following order of priority: interest, late charges, fees and then principal.

5. **PREPAYMENT:** You may prepay, in full or in part, the amount owed on this Contract at any time without penalty. If you prepay the Contract in part, you agree to continue to make regularly scheduled payments until you pay all amounts due under this Contract. This will reduce the number of payments you will make. If you prepay in full, we will refund to you any unearned credit insurance premium you paid.

6. **WAIVERS:**
   (a) WAIVER BY SELLER AND ASSIGNEE: We and Assignee waive the right to treat any property as security for the repayment of this Contract, except for the Vehicle and the other security specifically mentioned in this Contract.
   (b) WAIVERS BY BUYER, CO-SIGNER AND CO-OWNER: You agree to make all payments on or before they are due without our having to ask. If you don't we may enforce our rights without notifying you in advance. You give up any right you may have to require that we enforce our rights against some other person or property before we enforce our rights against you. You agree that we may give up our rights against some other person but not against you. You waive due diligence in collection and all defenses based on suretyship and impairment of collateral or security.

7. **INTEREST AFTER MATURITY AND JUDGMENT:** Interest at the rate provided in this Contract shall continue to accrue on the unpaid balance until paid in full, even after maturity and/or after we get a judgment against you for the amounts due. This will apply even if the maturity occurs because of acceleration. If at any time interest as provided for in this paragraph is not permitted by law, interest shall accrue at the highest rate allowed by applicable law beginning at that time.

8. **YOUR PROMISES ABOUT OUR SECURITY INTEREST:** You will not permit anyone other than us to obtain a security interest or other rights in the Vehicle. You will pay all filing fees necessary for us to obtain and maintain our security interest in the Vehicle. You will assist us in having our security interest noted on the Certificate of Title to the Vehicle. You will not sell or give away the Vehicle. If someone puts a lien on the Vehicle, you will pay the obligation and clear the lien.

9. **YOUR PROMISES ABOUT THE VEHICLE:** You will keep the Vehicle in good condition and repair. You will pay all taxes and charges on the Vehicle. You will pay all costs of maintaining the Vehicle. You will not abuse the Vehicle or permit anything to be done to the Vehicle which will reduce its value, other than for normal wear and use. You will not use the Vehicle for illegal purposes or for hire or lease. You will not move the Vehicle from your address shown on the front of this Contract to a new permanent place of garaging without notifying us in advance.

10. **YOUR PROMISES ABOUT INSURANCE:** You will keep the Vehicle insured against fire, theft and collision until all sums due us are paid in full. The insurance coverage must be satisfactory to us and protect your interests and our interests at the time of any insured loss. The insurance must name us as "loss-payee" on the policy. The insurance must be written by an insurance company qualified to do business in Pennsylvania and licensed to sell insurance in the state where the Vehicle is permanently garaged. The insurance policy must provide us with at least 10 days' prior written notice of any cancellation or reduction in coverage. On request, you shall deliver the policy or other evidence of insurance coverage to us. In the event of any loss or damage to the Vehicle, you will immediately notify us in writing and file a proof of loss with the insurer. We may file a proof of loss on your behalf if you fail or refuse to do so. We may endorse your name to any check, draft or other instrument we receive in payment of an insured loss or return insurance premiums. We may apply any insurance proceeds we receive to repair or replace the Vehicle if, in our opinion, it is economically feasible and you are not then in default under this Contract. Otherwise, we will apply the insurance proceeds to reduce the unpaid balance due us.

11. **OUR RIGHTS IF YOU BREAK YOUR PROMISES ABOUT THE SECURITY INTEREST, VEHICLE OR INSURANCE:** If you fail to pay filing fees, taxes, or amounts necessary to keep the Vehicle in good condition and repair, we may, if we choose, advance the sums necessary to protect our interest. If you fail to keep in force the required insurance and/or fail to provide evidence of such insurance to us, we may notify you that you should purchase the required insurance at your expense. If you fail to purchase the insurance within the time stated in the notice and/or fail to provide evidence of such insurance to us, we may purchase coverage under a Lender's Collateral Protection Policy to protect our interest in the balance due under this Contract, to the extent permitted by applicable law, and charge you the cost of the premiums and any other amounts we incur in purchasing the insurance. THE INSURANCE WE PURCHASE MAY BE SIGNIFICANTLY MORE EXPENSIVE AND PROVIDE YOU LESS COVERAGE THAN INSURANCE YOU COULD PURCHASE YOURSELF. If permitted by applicable law, any sums we advance on your behalf may be added to the balance on which we impose interest as provided in this Contract. Such sums as we advance will be payable by you, as we alone may direct, as follows:
   (a) immediately on demand;
   (b) along with your monthly payment and your monthly payment will be increased accordingly;
   (c) at the end of the Contract term; or
   (d) as provided for in a separate note or other credit instrument.
   If we advance any amounts on your behalf, it will not cure your default. The rights stated in this paragraph are in addition to our rights stated in other paragraphs for your failure to keep your promises to us.
   We may receive reasonable compensation for the services which we provide in obtaining any required insurance on your behalf. In certain states, the required insurance may be obtained through a licensed insurance agency affiliated with us. This agency will receive a fee for providing the required insurance. In addition, an affiliate may be responsible for some or all of the underlying insurance risks and may receive compensation for assuming such risks.

12. **DEFAULT:** In this paragraph, "You" means the Buyer, Co-Signer and Co-Owner, or any one of them. You will be in "Default" of this Contract if any one or more of the following things happen:
   (a) you do not make any payment on or before it is due; or
   (b) you do not keep any promise you made in this Contract; or
   (c) you do not keep any promise you made in another Contract, Note, Loan or Agreement with Seller or Assignee; or
   (d) you made any untrue statement in the credit application for this Contract; or
   (e) you committed any forgery in connection with this Contract; or
   (f) you die, are convicted of a crime involving fraud or dishonesty, or are found by a court with jurisdiction to do so to be incapacitated; or
   (g) you file bankruptcy or insolvency proceedings, or anyone files bankruptcy or insolvency proceedings against you; or
   (h) you take the Vehicle outside the United States or Canada without our written consent; or
   (i) you use the Vehicle or allow someone else to use it in a way that causes it not to be covered by your insurance; or
   (j) you do something that causes the Vehicle to be subject to confiscation by government authorities; or
   (k) the Vehicle is lost, stolen, destroyed or damaged beyond economical repair, and not fixed or found within a reasonable time; or
   (l) another creditor tries to take the Vehicle or your money on deposit with Assignee by legal process.

13. **OUR RIGHTS IF YOU ARE IN DEFAULT OF THIS CONTRACT:** If you are in Default of this Contract, we may enforce our rights according to law. We may also do the things specifically mentioned in this Contract. We may do one of these things and at the same time or later do another. Some of the things we may do are the following:
   (a) ACCELERATION: We can demand that you pay to us the entire unpaid balance owing on the Contract and all unpaid Finance Charges and other money due. You agree that you will pay this money to us in one single payment immediately upon receiving our demand.
   (b) REPOSSESSION: We can repossess the Vehicle, unless prohibited by law. We can do this ourselves, have a qualified person do it for us, or have a government official (by replevin) do it for us. You agree that we can peaceably come on to your property to do this. We may take any other things found in the Vehicle, but will return these things to you if you ask. If you want these things back, you may reclaim them within thirty (30) days of our mailing you a Notice of Repossession. If you do not reclaim the things found in the Motor Vehicle within that time, we may dispose of those things in the same manner as the Motor Vehicle. You agree that we may use your license plates in repossessing the Vehicle and taking it to a place for storage.
   (c) VOLUNTARY DELIVERY: We can ask you to give us the Vehicle at a reasonably convenient place. You agree to give us the Vehicle if we ask.
   (d) DELAY IN ENFORCEMENT: We can delay in doing any of these things without losing any rights.

14. **SOME THINGS YOU SHOULD KNOW IF WE REPOSSESS THE VEHICLE:** If we repossess without using a governmental official (by replevin):
   (a) NOTICE: We will send you a Notice of Repossession to your last address we know about. This Notice will tell you how to buy back (redeem) the Vehicle. You will NOT have the right to reinstate the Contract. This means you will have to pay the total balance on the Contract and other amounts due. You may not get the Vehicle back by paying delinquent installments. This Notice will tell you other information required by law.
   (b) REDEMPTION: You have the right to buy back (redeem) the Vehicle within 15 days of the mailing of the Notice and at any later time before we sell the Vehicle. If you redeem the Vehicle, we will deliver the Vehicle to you at a place as provided by law, as soon as is reasonably possible, but in not more than ten (10) business days of our receipt of the funds required. If you do not redeem, you give up all claim to the Vehicle.
   (c) SALE: If you don't redeem, we will sell the Vehicle. The money received at sale will be used to pay costs and expenses you owe, and then to pay the amount you owe on the Contract.
   (d) SURPLUS OR DEFICIENCY: If there is money left, we will pay it to the Buyer. If there is not enough money from the sale to pay what you owe, Buyer and Co-Signer agree to pay what is still owed to us.
   (e) EXPENSES: You agree to pay the costs of repossessing, storing, repairing, preparing for sale and selling the Vehicle as may be allowed by law. These costs will only be due if:
   (1) default exceeds 15 days at the time of repossession;
   (2) the amount of the costs are actual, necessary and reasonable; and
   (3) we can prove the costs were paid.

15. **HEIRS AND PERSONAL REPRESENTATIVES BOUND:** After your death, this Contract shall be enforceable against your heirs and personal representatives of your estate.

16. **GOVERNING LAW:** This Contract is to be interpreted according to the law of Pennsylvania.

17. **SEVERABILITY OF PROVISIONS:** If for any reason any part of this Contract shall become illegal, void or unenforceable, that part shall not be a part of this Contract.

18. **ASSIGNMENT BY BUYER:** Buyer shall not assign this Contract.

19. **THERE ARE NO WARRANTIES BY SELLER, EXPRESSED OR IMPLIED, INCLUDING THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, UNLESS WE PROVIDE TO YOU A SEPARATE WRITTEN WARRANTY.**

---

**Buyer's Guide Window Sticker.** If the Car which is described on the face of this Contract has a Buyer's Guide Window Sticker required by the Federal Trade Commission Used Car Trade Regulation Rule, the following notice applies:

The information you see on the window form for this Vehicle is part of this Contract. Information on the window form overrides any contrary provisions in the contract of sale.

**NOTICE—ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

---

**NOTICE OF PROPOSED CREDIT INSURANCE**

The signer(s) of this Contract hereby take(s) notice that Group Credit Life Insurance coverage or Group Credit Life and Disability Insurance coverage will be applicable to this Contract if so marked on the front of this Contract, and each such type of coverage will be written by the insurance company named. This insurance, subject to acceptance by the insurer, covers only the person or persons signing the request for such insurance. The amount of charge is indicated for each type of Credit Insurance to be purchased. The term of insurance will commence as of the date the indebtedness is incurred and will expire on the original scheduled maturity date of the indebtedness. Subject to acceptance by the insurer and within 30 days, there will be delivered to the insured debtor(s) a certificate of insurance more fully describing the insurance. In the event of prepayment of the indebtedness, a refund of insurance charges will be made when due.

---

**NOTICE: SEE OTHER SIDE FOR IMPORTANT INFORMATION.**
**THE PROVISION BELOW IS NOT PART OF THE PENNSYLVANIA MOTOR VEHICLE INSTALLMENT SALE CONTRACT BETWEEN THE BUYER AND SELLER.**

**ASSIGNMENT**

To induce you, the "Assignee" identified on the face of this Contract or as follows, _____ (Name) to purchase the within Contract, the Seller hereby warrants and represents, and continues to warrant and represent that: the sale has been made in strict conformity with all applicable federal, state and local laws and regulations, including, but not limited to, Article 2 of the Pennsylvania Uniform Commercial Code (13 Pa.C.S.A. §§2101 et seq); our title to the Contract and the Vehicle covered thereby is absolute, free of all liens, encumbrances and security interests, and is subject only to the rights of the Buyer as set forth therein; the Contract is genuine, the signatures thereon are not forgeries, arose from the sale of the Vehicle therein described, and all parties thereto are of full age and had capacity to contract; the description of the Vehicle and extra equipment is complete and correct; the cash downpayment and/or trade-in allowance were actually received and no part thereof consisted of notes, post-dated checks, other credit advanced by us to Buyer or rebates or similar payments from us to the Buyer (however manufacturer rebates may constitute all or a part of the downpayment); all warranties and statements therein are true; there is due thereon the Amount Financed plus interest at the Annual Percentage Rate of the Contract set forth therein; we are duly licensed under the Pennsylvania Motor Vehicle Sales Finance Act and have duly complied with all requirements thereof with respect to the transaction and with the federal Truth-in-Lending Act and with any other federal or state law, rule or regulation applicable to this Contract; a motor vehicle title certificate showing a lien or encumbrance in favor of Assignee has been or will be applied for promptly; the registration of the Vehicle has not been suspended and the Seller knows of no facts which may result in the suspension of said registration under the Pennsylvania Motor Vehicle Financial Responsibility Act; the Buyer(s) named in the within Contract is (are) personally known to the Seller to be the same identical person(s) whose signature(s) is (are) affixed to this Contract; and Seller has no knowledge of facts impairing the validity or value of the Contract. If any such warranties or representations should be breached at any time, Seller shall repurchase said Contract from Assignee, on demand, and will pay therefor, in cash, the amount owing thereon, computed as set forth below, and said remedy shall be cumulative and not exclusive, and shall not affect any other right or remedy that Assignee might have at law or in equity against Seller. In the event that Buyer fails or refuses to make any payment due hereunder on the assertion, either oral or written, that the Vehicle is defective, not as represented to the Buyer by Seller, or that Seller refuses to honor any warranty or service agreement of Seller or manufacturer, Seller agrees that, on being advised by Assignee of such claim of Buyer, Seller will repurchase the Contract from Assignee and pay Assignee for same immediately in accordance with the repurchase terms set forth below, and Seller further agrees to hold Assignee harmless from any other claims of Buyer, including attorneys' fees, costs and expenses incurred in defending against claims asserted by Buyer and including claims for refund of payments made by Buyer to Assignee. If the Seller contracts to purchase property insurance on behalf of the Buyer, and that insurance is cancelled by the insurance company prior to its scheduled expiration date, the Seller will attempt to place comparable coverage with another insurance company on behalf of the Buyer. If Seller is unable to do so, Seller will notify Buyer and pay to Buyer any additional costs incurred by the Buyer in obtaining replacement insurance for the unexpired period of the original insurance policy. By delivering this Contract to the Assignee and accepting payment for it, Seller authorizes the Assignee to complete or correct the identification of the Assignee in this Assignment to reflect the true Assignee who purchased this Contract, and/or to sign Seller's name to this Assignment, without recourse, if the Assignment has been delivered without Seller's signature.

In the event that Seller is required by this Assignment to repurchase the Contract and/or Vehicle, Seller shall pay to Assignee, in cash, the full unpaid balance of the Contract as of the date of repurchase, plus any then earned Finance Charge and any and all costs and expenses paid or incurred by Assignee in respect thereto, including reasonable attorneys' fees, in connection with claims by or against any Buyer, Owner or persons in possession of the Vehicle and/or by or against Seller.

For value received, Seller, by signing the Assignment on the front side, hereby sells, assigns and transfers unto the Assignee, its successors and assigns, the within Contract, all moneys due and to become due thereunder, and all right, title and interest in and to the Vehicle therein described, with full power in the Assignee in its or our name to take such legal or other action which we might have taken save for this Assignment.

IF WITHOUT RECOURSE IS APPLICABLE—Seller's assignment shall, except for the provisions hereof above, be without recourse.

IF WITH FULL RECOURSE IS APPLICABLE—Seller agrees that, in addition to the paragraph above titled "Assignment," in the event of default by Buyer in the full payment on the due date thereof of any installment payable under this Contract, or in the prompt performance of any other obligation to be performed under the Contract by Buyer, Seller will, on demand, and Assignee, forthwith repurchase the Contract from Assignee for a repurchase price, in cash, computed as set forth above.

IF WITH REPURCHASE IS APPLICABLE—Seller agrees that, in addition to the provisions of the paragraph above titled "Assignment," in the event of any default by Buyer which shall entitle Assignee to repossess the Vehicle, Seller will, if the Vehicle is repossessed by Assignee and delivered to Seller, and without regard to the condition of the Vehicle, forthwith repurchase the Contract and the Vehicle from Assignee for a repurchase price, in cash, computed as set forth above.

| MV-1 (4-10) | | | | | | | 1. TAX/FEES | |
|---|---|---|---|---|---|---|---|---|
| MAKE OF VEHICLE | VEHICLE IDENTIFICATION NUMBER (VIN) IF TRACING REQUIRED, TAPE SECURELY TO REVERSE SIDE OF THIS COPY | | | BODY TYPE (SDN, TK, BUS, ETC) | MODEL YEAR | PURCHASE PRICE (See Note on Reverse) | | 26781.00 |
| KIA | KNDPBCA28B7031727 | | | WAGON 4 DOOR | 201 | | | |
| GROSS VEHICLE WT RATING | FUEL TYPE: ☐ GASOLINE ☐ DIESEL ☐ ELECTRIC ☐ HYBRID ☐ PROPANE ☐ OTHER | DIN/MECHANIC# | | AUTHORIZED NOTARY PUBLIC OR CERTIFIED INSPECTION MECHANIC (PRINT NAME) | | LESS TRADE-IN | | 7900.00 |
| CHECK THE APPROPRIATE BLOCK IF THE VEHICLE IS TO BE USED OR WAS FORMERLY USED AS A ☐ TAXI OR A ☐ POLICE VEHICLE (IF APPLICABLE) | I certify that I have verified that a legible tracing cannot be secured and that the above VIN and vehicle weight information listed here and in Section F are correct | | | ► SIGN HERE | | TAXABLE AMOUNT | | 18881.00 |

| LAST NAME (OR FULL BUSINESS NAME) | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# OR BUS ID# | | SALES TAX X 6% (08), X 7% (07) OR X 8% (08) * (See Note on Reverse) | 1132.86 |
|---|---|---|---|---|---|---|
| SHANEBERGER | KERI | | | | | |
| CO-PURCHASER LAST NAME | FIRST NAME | MIDDLE NAME | PA DL/PHOTO ID# | DATE OF BIRTH | LESS TAX CREDIT | |
| SHANEBERGER | STEPHEN | R | | | | |
| STREET | | | DATE ACQUIRED/PURCHASED | COUNTY CODE | | |
| RR7 BOX 1267 | | | 08/10/2011 | | 1 SALES TAX DUE | 1132.86 |
| CITY | STATE | ZIP CODE | DEALER ID NUMBER (IF APPLICABLE) | REFER TO COUNTY CODES LISTING ON REVERSE SIDE OF YELLOW COPY | 1A. EXEMPTION REASON CODE (must be a number from 1 to 26 or 0) | |
| SAYLORSBURG | PA | 18353 | | | | |

NOTE: If a co-purchaser other than your spouse is listed and you want the title to be listed as "Joint Tenants With Right of Survivorship" (On death of one owner, title goes to surviving owner.) CHECK HERE ☐. Otherwise, the title will be issued as "Tenants in Common" (On death of one owner, interest of deceased owner goes to his/her heirs or estate.)

NOTE: IF THE VEHICLE IS TO BE USED AS A DAILY RENTAL OR LEASED VEHICLE, CHECK THIS BLOCK ☐. IF BLOCK IS CHECKED, COMPLETE AND ATTACH FORM MV-1L.

1B. EXEMPTION NO.

| ☐ REFLECTS THE AMOUNT OF MILEAGE IN EXCESS OF ITS MECHANICAL LIMITS | ☐ IS NOT THE ACTUAL MILEAGE WARNING: ODOMETER DISCREPANCY | ODOMETER READING | 1C. PTA NO. | |
|---|---|---|---|---|
| WARNING: FEDERAL AND STATE LAWS REQUIRE THAT YOU STATE THE MILEAGE IN CONNECTION WITH THE TRANSFER OF OWNERSHIP. FAILURE TO COMPLETE OR PROVIDING A FALSE STATEMENT MAY RESULT IN FINES AND/OR IMPRISONMENT. | | _ _ _ _ _ 3 | TENTHS 4 ☒ | 2. TITLE FEE | 22.50 |

| IF NO LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, FIN REQUIRED) ☐ YES ☐ NO | IF NO 2ND LIEN, CHECK ☐ IS THIS AN ELT? (IF YES, FIN REQUIRED) ☐ YES ☒ NO | |
|---|---|---|
| 1ST LIENHOLDER FINANCIAL INSTITUTION NUMBER | 2ND LIENHOLDER FINANCIAL INSTITUTION NUMBER | 3. LIEN FEE 5.00 |
| 1ST LIENHOLDER NAME PNC BANK, NA | 2ND LIENHOLDER NAME | 4. REGISTRATION OR PROCESSING FEE 36.00 |
| STREET 2730 LIBERTY AVENUE | STREET | |
| CITY PITTSBURGH | STATE PA | ZIP CODE 15222 | CITY | STATE | ZIP CODE | FEE EXEMPT NUMBER AS ASSIGNED BY THE DEPARTMENT |

| MAKE OF VEHICLE | VEHICLE IDENTIFICATION NUMBER (VIN) | MODEL YEAR | 5. DUPLICATE REG. FEE NO OF CARDS |
|---|---|---|---|
| CHEVROLET | 2CNDL73FX76042660 | 2007 | |
| BODY TYPE (SDN, BUS, TK, ETC) WAGON 4 DOOR | CONDITION OF VEHICLE ☐ GOOD ☐ FAIR ☐ POOR | | |

| PASSENGER TAXI/BUS | ☐ PASSENGER ☐ TAXI ☐ LIMOUSINE ☐ SCHOOL BUS ☐ MASS TRAN | | SHANEBERGER, KERI Vehicle Title Misc | 6. TRANSFER FEE 6.00 |
|---|---|---|---|---|
| MOTORCYCLE MOTOR DRIVEN CYCLE MOPED | CYLINDER CAPACITY 50CC OR LESS ☐ YES ☐ NO | BRAKE HORSEPOWER | | 7 INCREASE FEE |
| | OPERABLE PEDALS ☐ YES ☐ NO | MAX DESIGN SPE | | |
| | AUTOMATIC TRANSMISSION ☐ YES ☐ NO | DESIGNED/ALTER | | 8. REPLACEMENT FEE |
| MOTORHOME | CHASSIS MFR | BODY MAKE | | |
| TRAILER & VEHICLES BELOW | NUMBER OF AXLES | REG REGISTERE | | 9. TOTAL PAID (ADD 1 THRU 8) Send One Check In This Amount → 1202.36 |
| | SUM OF GAWR'S | UNLADEN WT (E | | |
| TRUCK TRUCK TRACTOR | REQ REGISTERED GROSS COMBINATION WT | GROSS COMBINA | | |

| ORIGINAL PLATE – CHECK ONE ☐ PLATE TO BE ISSUED BY DEPARTMENT (PROOF OF INSURANCE MUST BE ATTACHED.) ☐ EXCHANGE PLATE TO BE ISSUED BY DEPARTMENT ☐ TEMPORARY PLATE ISSUED BY FULL AGENT (Note: This plate will expire 90 days from date of issuance.) | ☐ TRANSFER OF PREVIOUSLY ISSUED PLATE ☒ TRANSFER & RENEWAL OF PLATE PLATE NO GNF2316 EXPIRES Month 9 Year 2011 TRANSFERRED FROM TITLE NO | ☐ TRANSFER & REPLACEMENT OF PLATE ☐ TRANSFER OF PLATE & REPLACEMENT OF STICKER REASON FOR REPLACEMENT ☐ LOST ☐ DEFACED ☐ STOLEN ☐ NEVER RECEIVED (Lost in Mail) NOTE: If "NEVER RECEIVED" block is checked, applicant must complete Form MV 44 VIN 2CNDL73FX76042660 |
|---|---|---|

| TEMP. PLATE NO. | SIGNATURE OF PERSON FROM WHOM PLATE IS BEING TRANSFERRED (IF OTHER THAN APPLICANT) ► SIGN HERE | RELATIONSHIP TO APPLICANT |
|---|---|---|

| INSURANCE COMPANY NAME 21ST CENTURY INDEMNITY | NAIC NO | POLICY NO (OR ATTACH BINDER) | POLICY EFFECTIVE DATE 07/04/1 | POLICY EXPIRATION DATE 01/04/12 |
|---|---|---|---|---|
| ISSUING AGENT INFORMATION | I CERTIFY THAT ON MONTH 8 DAY 10 YEAR 1 I HAVE CHECKED TO DETERMINE THAT THE VEHICLE IS INSURED AND ISSUED TEMPORARY REGISTRATION TO THE ABOVE APPLICANT, IN COMPLIANCE WITH ALL APPLICABLE PROVISIONS OF THE VEHICLE CODE AND DEPARTMENT REGULATIONS | ISSUING AGENT (PRINT NAME) GATEWAY KIA OF QUAKERTOWN ISSUING AGENT SIGNATURE | AGENT NO 85-9357 TELEPHONE NO ( ) |

| SUBSCRIBED AND SWORN TO BEFORE ME MONTH 8 DAY 10 YEAR 20 SIGNATURE OF PERSON ADMINISTERING OATH SIGN IN PRESENCE OF NOTARY | I/WE CERTIFY THAT I/WE HAVE EXAMINED AND SIGNED THIS APPLICATION AFTER ITS COMPLETION. I/WE FURTHER CERTIFY THAT ALL STATEMENTS HEREIN ARE TRUE AND CORRECT AND MAKE APPLICATION FOR CERTIFICATE OF TITLE FOR THE VEHICLE DESCRIBED IN SECTION A. IF ANY EXEMPTION IS CLAIMED, THE PURCHASER FURTHER CERTIFIES THAT HE/SHE IS AUTHORIZED TO CLAIM THIS EXEMPTION. I/WE ACKNOWLEDGE THAT I/WE MAY LOSE MY/OUR OPERATING PRIVILEGE(S) OR VEHICLE REGISTRATION FOR FAILURE TO MAINTAIN FINANCIAL RESPONSIBILITY ON THE CURRENTLY REGISTERED VEHICLE FOR THE PERIOD OF REGISTRATION. I/WE ACKNOWLEDGE THAT I/WE MAY BE SUBJECT TO A FINE NOT EXCEEDING $5,000 AND IMPRISONMENT OF NOT MORE THAN TWO YEARS FOR ANY FALSE STATEMENT THAT I/WE MAKE ON THIS APPLICATION. Signature of Purchaser or Authorized Signer Signature of Co-Purchaser or Authorized Signer | Telephone No ( ) MESSENGER NO. |
|---|---|---|


# PNC BANK

## CERTIFICATE

The undersigned, Janet L. Deringer, Assistant Secretary of PNC Bank, National Association does hereby certify as follows:

1. National City Bank was a wholly owned subsidiary of National City Corporation.

2. Effective December 31, 2008, National City Corporation merged with and into The PNC Financial Services Group, Inc. and National City Bank became a wholly owned subsidiary of The PNC Financial Services Group, Inc.

3. Effective as of November 6, 2009, National City Bank and pursuant to approval granted by the United States Office of the Comptroller of the Currency (as evidenced by the official certification dated November 6, 2009 attached hereto as Exhibit "A"), was merged with and into PNC Bank, National Association.

4. PNC Bank, National Association is a duly organized and existing national banking association (Charter Number 1316) and wholly owned subsidiary of PNC Bancorp, Inc. (a wholly owned subsidiary of The PNC Financial Services Group, Inc.), having its main office located at 222 Delaware Avenue, Wilmington, Delaware 19801 and using federal Employer Identification Number 22-1146430.

IN WITNESS WHEREOF, the undersigned has hereunto set her hand and affixed the seal of this Association this 6th day of November, 2009.

_Janet L. Deringer_



Member of The PNC Financial Services Group

One PNC Plaza 249 Fifth Avenue Pittsburgh Pennsylvania 15222 2707



CERTIFIED TRUE COPY